UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE CINCINNATI CASUALTY COMPANY,

Plaintiff,

v. Case No: 2:26-cv-346-KCD-NPM

SIM-BELL, LLC, and GARY SIMMONS, Individually,

Defendants.

---

**OPINION AND ORDER**

After Defendants' boat was struck by lightning, Plaintiff the Cincinnati Casualty Company seeks a declaration that Sim-Bell, LLC and Gary Simmons breached the Concealment or Fraud provision of the insurance policy and thus are entitled to no coverage. Defendant Gary Simmons, however, seeks to dismiss the complaint because the insurance policy must be reformed for mutual mistake and the insurance policy is ambiguous as to who the named insureds are. For the below reasons, his motion is denied.

## I. Background

On September 3, 2025, a 2022 70' Sunseeker with hull identification number XSK07714H122 (the "Vessel") was struck by lightning. (Doc. 1 at ¶ 9.)

The Vessel was insured by Cincinnati under a Capstone Yacht Policy, which provides $2,800,000 in hull coverage and had a policy period of January 11, 2025, through January 11, 2026 (the "Policy"). (*Id.* at ¶¶ 10, 12.) Both Defendants—Sim-Bell, LLC and Gary Simmons—are listed as "Named Insureds" (the "Insureds"). (*Id.* at ¶ 11; Doc. 1-1 at 1, 5.)

Several years earlier, when Simmons applied for the policy, he provided Cincinnati an unsigned application that only listed him as the "Titled Insured." (Doc. 1 at ¶ 14.) The initial application also noted three previous vessels Simmons had owned—(1) Carver 52; (2) Silverton 40; and (3) Sea Ray 31—and claimed no previous losses. (*Id.*)

To finalize coverage, both Simmons and Sim-Bell provided a signed application dated January 10, 2023. (*Id.* at ¶ 15.) The application listed Sim-Bell as the "Titled Insured" and Simmons as the "Beneficial Owner." (*Id.*) As in the initial application, the signed application included Simmons's previous three vessels he had owned and confirmed he had no prior losses. (*Id.* at ¶ 16.)

Before Cincinnati accepted the application, it requested information about the post-Hurricane Ian condition of the dock where the Vesel would be moored. (*Id.* at ¶ 18.) In an email, an agent for the Insureds responded that "[t]here was no damage suffered in this area from IAN at all." (*Id.*) Cincinnati then accepted the final signed application, which included language informing

the Insureds that "the information furnished [on the signed application] shall be the basis of the contract should a policy be issued." (*Id.* at ¶ 17.)

Cincinnati later discovered a discrepancy in the application. (*Id.* at ¶¶ 19, 21.) Specifically, Cincinnati found that Simmons made a prior claim for a September 28, 2022, hurricane loss to a 2018 23' Grady White vessel, which had been moored at the same location as the Vessel. (*Id.*) The claim for the Grady White was submitted two months *before* Simmons submitted the unsigned application and three months before the Insureds submitted the final signed application—both of which claimed Simmons made no prior claims of loss. (*Id.* at ¶ 20.)

Cincinnati now brings this lawsuit to declare the Insureds breached the Concealment or Fraud provision of the Policy and thus are entitled to no coverage.

## II. Legal Standard

To survive a motion to dismiss, a complaint needs sufficient factual allegations, accepted as true, to show the claim is plausible on its face. *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346 (11th Cir. 2025). To be facially plausible, the plaintiff must plead facts that permit a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1347. "We use a two-step process to determine

whether a claim survives Rule 12(b)(6) scrutiny." *Id.* at 1346-47. "At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations . . . to determine whether they plausibly suggest an entitlement to relief." *Id.*

## III. Discussion

Simmons argues the case should be dismissed for two reasons: (1) the Policy should be reformed to exclude him as a named insured due to a mutual mistake; and (2) the Policy is ambiguous and should be interpreted against the drafter (here Cincinnati) to exclude him as a named insured. (Doc. 14.) The first reason essentially asserts an affirmative defense which cannot be resolved in a motion to dismiss, and the second reason is without merit.

### a. Mutual Mistake

The crux of Simmons's first argument is his request to reform the Policy due to mutual mistake. But this essentially raises a factual dispute that cannot be resolved at the motion to dismiss stage. *See Caterpillar Fin. Servs.*, 147 F.4th at 1346-47 (stating courts must accept "the plaintiff's allegations as true and 'constru[e] them in the light most favorable to [the] [p]laintiff[].'"); *BrandsMart U.S.A. of W. Palm Beach, Inc. v. DR Lakes, Inc.*, 901 So. 2d 1004, 1005-06 (Fla. 4th DCA 2005) (outlining the burden of proof for an instrument to be reformed); *In re Lewis*, 669 B.R. 429, 437 (Bankr. M.D. Fla. 2025)

(outlining the elements for reformation of a written instrument). All that is required to survive a motion to dismiss are factual allegations which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Caterpillar Fin. Servs.*, 147 F.4th at 1346-47. Cincinnati has alleged that Simmons is a named insured and he is included as such in the Policy. Whether that is accurate would require the Court to resolving competing facts. Notably, other than *Twombly*, Simmons failed to cite a single case which addressed his arguments in the context a motion to dismiss.[1] (Doc. 14 at 6–15.) Since Simmons fails to discuss any factual allegations in the complaint, the motion is denied as to his first argument.

[1] Instead, Simmons cites cases discussing summary judgment or bench trials. *See, e.g.*, *Bank of N.Y. Mellon v. Gouda*, No. 6:23-cv-2246-JSS-LHP, 2026 WL 532450 (M.D. Fla. Feb. 26, 2026) (discussing the courts findings of facts and conclusions of law after a trial); *S. Coal Corp. v. Drummond Coal Sales, Inc.*, 28 F.4th 1334, 1341-42 (11th Cir. 2022) (discussing a district court's ruling of ambiguity in a contract at the motion for summary judgment phase); *Essex Ins. Co. v. Tina Marie Ent., LLC*, 602 F. App'x 471, 473 (11th Cir. 2015) (discussing the district court's grant of summary judgment); *Tobin v. Mich. Mut. Ins. Co.*, 948 So. 2d 692 (Fla. 2006) (answering a certified question from the Eleventh Circuit after summary judgment and a bench trial at the district court level); *Harkless v. Laubhan*, 278 So. 3d 728, 737 (Fla. 2d DCA 2019) (discussing a trial court's failure to provide reformation after the trial court held bench trial); *Spielberg v. Progressive Select Ins. Co.*, 315 So. 3d 1 (Fla. 4th DCA 2021) (discussing a district court's grant of summary judgment); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179 (11th Cir. 2002) (discussing a district court's grant of summary judgment); *Ellsworth v. Ins. Co. of N. Am.*, 508 So. 2d 395 (Fla. 1st DCA 1987) (discussing a trial court's entry of final judgment, after conducting a trial, where the trial court concluded the policy was not ambiguous and provided no coverage); *Evanston Ins. Co. v. Mellors*, 141 F. Supp. 3d 1367 (S.D. Ga. 2015) (discussing ambiguity at the summary judgment stage).

**b. Ambiguity**

As to the second argument, there is nothing on the face of the Policy which renders it ambiguous or requires it to be interpreted to exclude Simmons as a named insured. "Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *See Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002). Interpretation of an insurance contract—including whether a provision is ambiguous—is a question of law. *See Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003). "Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *See Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). A policy is considered ambiguous "if the language is susceptible to more than one reasonable interpretation[.]" *Id.*

Simmons contends the Policy is ambiguous for four reasons: (1) the submitted signed application crossed him out as the "Titled Insured"; (2) the submitted signed application only lists him as a beneficial owner; (3) Sim-Bell, LLC appears first below the words "named insured"; and (4) Section VII(A) of the Special Provision Endorsement—Florida indicates the "first named

insured may cancel the policy." (Doc. 14 at 15–16.) None of these arguments persuade the Court.

Simmons's first two arguments lack substance. The Florida Supreme has already made clear courts are not required to consider extrinsic evidence in determining whether an ambiguity exists in the Policy. *See Ruderman*, 117 So. 3d at 949. Instead, a court is to interpret the language of the policy itself to give effect to the policy as written. *Id.* at 948. Accordingly, the Court will only look to the Policy itself.

Simmons's last two arguments are similarly lacking as they conflict with one another. The special provision Simmons highlights—Section VII(A)—contains similar language as other provisions when referring to "[t]he first Named Insured shown in the Declarations." (Doc. 1-1 at 38; Doc. 1-1 at 32, 39 (referring to the "first Named Insured").) While Simmons contends the language suggests only Sim-Bell, LLC is a named insured, the very mention of "[t]he *first* Named Insured" implies additional named insureds. Further, the language carves out "[t]he first Named Insured" because it grants additional rights to Sim-Bell, LLC by permitting it to cancel the insurance and limits Cincinnati's notice requirements by limiting notice to the first Named Insured. (Doc. 1-1 at 32, 38, 39.) As such, these provisions do not create the ambiguity Simmons believes them to.

Finally, there are no other definitions or provisions throughout the Policy that would permit a reasonable interpretation that Simmons is not a named insured. Simmons is listed under the heading "Named Insured" in two different locations and no endorsement or definition changes such denotation. Therefore, at this point, the Court cannot find the Policy is ambiguous.[2]

Accordingly, it is **ORDERED:**

Defendant Gary Simmons's Amended Motion to Dismiss (Doc. 14) is **DENIED.**

**ENTERED** in Fort Myers, Florida, on August 11, 2026.



Kyle C. Dudek
United States District Judge

[2] This Opinion and Order does not prevent any party from asserting this argument at a later stage in the proceedings with a different standard of review.